IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUZ ACEVEDO,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO. 11-2010 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

    Plaintiff Luz Acevedo (hereafter plaintiff "Acevedo") filed an application for a period of disability and disability insurance benefits with defendant, the Commissioner of Social Security (hereafter "Commissioner"). Plaintiff Acevedo alleged disability since July 15, 2001 due to back pain and depression. The application was denied initially and on reconsideration. Plaintiff Acevedo then requested an administrative hearing be held. On February 12, 2010, the presiding Administrative Law Judge (hereafter "ALJ") entertained same, wherein plaintiff Acevedo waived being present. On April 8, 2010, the ALJ issued a decision finding plaintiff Acevedo not disabled from amended alleged onset date of January 15, 2004 until December 31, 2006, the date she was last insured for disability benefits. Said decision was affirmed by the Appeals Council which became the final decision rendered by the Commissioner. On October 12, 2011, plaintiff Acevedo filed this federal action seeking judicial review of the Commissioner's final decision denying her application for a period of disability and ensuing disability benefits. (Docket No. 1).[1]

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"… [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

On March 30, 2012, the Court referred the matter to a Magistrate Judge for report and recommendation. On May 1, 2012, plaintiff Acevedo's counsel, Atty. Salvador Medina De-La-Cruz, filed an "Informative Motion" consenting to the case being referred to a Magistrate Judge for disposition. (Docket No. 9). Thereafter, the parties filed their memoranda of law. (Docket Nos. 18 and 21).

Having examined the pleadings, including a review of the administrative record, and the applicable legal provisions, it is now proper to discuss the disposition of the pending motions.

**BACKGROUND**

Plaintiff Acevedo filed her application for a period of disability and disability insurance benefits with alleged onset date of July 15, 2001 because of exertional and non-exertional conditions. Counsel for plaintiff amended onset date to January 15, 2004. Plaintiff is a fifty-one year old female, with limited education and past former work experience as a fish cleaner, which was unskilled and of medium level of exertion.

The application was initially denied and was also denied on reconsideration. After an administrative hearing was held, wherein plaintiff Acevedo waived being present but was represented by counsel, the presiding ALJ considered the medical evidence of record and the testimonies of a medical expert, as well as of a vocational expert, who appeared via telephone conference. On April 8, 2010, the ALJ issued an opinion concluding that plaintiff Acevedo was not disabled from onset date, as amended, of January 15, 2004 through the date she was last insured of December 31, 2006 for she retained the residual functional

capacity to perform unskilled, medium type of work, and found there were jobs which existed in significant numbers in the national economy.

Plaintiff Acevedo objects the final decision denying her disability upon considering the ALJ did not adequately assess the evidence or opinions from treating sources nor explain the weight given to the same. Plaintiff claims the ALJ relied on the GRID instead of using a vocational expert when assessing the components of exertional limitations imposed by her back condition and the additional non-exertional limitations imposed by Acevedo's mental condition diagnosed as severe major depression. Plaintiff submits these factors had an eroding impact on the occupational base and in her capacity to perform work related activities and were not considered by the vocational expert for no hypothetical questions were submitted.[2] As such, plaintiff avers the ALJ failed to deploy the correct legal standard in not proposing hypothetical questions to the vocational expert, relying on the GRID while disregarding the presence of a mental condition and the limitations thereunder. Additionally, the ALJ did not indicate, according to plaintiff, what weight was given to the treating sources.

The Commissioner argues the medical evidence and the administrative proceedings met the substantive evidence test that supports the determination that plaintiff Acevedo was not considered under disability.

---

[2] In making said argument, plaintiff disregards the fact the ALJ considered the testimonies at the administrative hearing of a medical expert, Dr. Luis Cánepa, a psychiatrist who reviewed the medical record available, and a vocational expert, Dr. Marieva Puig, who participated by telephone.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff Acevedo was insured for disability purposes up to December 31, 2006 and did not engage in substantial gainful activity since alleged onset date of disability which was amended at the administrative hearing for January 15, 2004. The ALJ's opinion issued on April 8, 2010, after the case was previously remanded by the Appeals Council, determined plaintiff Acevedo last met the insured status requirements through the date of alleged onset date up to December 31, 2006. She did not engage in substantial gainful activity during said period. During the relevant time, plaintiff Acevedo had low back pain of unknown etiology and major depression but did not have an impairment or combination of impairments that could be considered severe under the Listing of Impairments as they appear in 20 CFR Part 404, Subpart P, Appendix 1; 20 CFR 404.1520(d), 404.1525 and 404.1526. (Docket No. 5, Transcript, p. 30).

As to limitations imposed by the mental component, the ALJ found plaintiff Acevedo had moderate restrictions in activities of daily living and moderate difficulties as to concentration, persistence and pace, without episodes of decompensation. Upon examining the medical evidence of record and the testimonies received at the administrative hearing, the ALJ concluded plaintiff Acevedo retained the residual functional capacity for medium work, except that she was limited to simple tasks consistent with unskilled type of work. (*Id.*, p. 31).

Considering plaintiff's exertional complaints of back pain, the ALJ averred plaintiff had a history of such pain since 1990 but she continued working until July 15, 2001, when the factory where she worked was closed. The evidence showed straightening of the lumbar

lordosis but otherwise the findings were normal. Plaintiff Acevedo received treatment from Dr. Jorge Méndez-Colón (hereafter "Dr. Méndez-Colón"), a Family Medicine physician, on a sporadic basis. The diagnosis was low back pain, cervico-dorsal myositis and osteoarthritis. Dr. Méndez-Colón noted the presence of major depression. The ALJ took into consideration the record showed there were only three visits to this physician in the year 2004 and presented significant gaps in treatment, which was assessed as inconsistent with a note of having treated the patient bi-monthly. (*Id.*, p. 32).

The record contains a neurological consultative evaluation on April 7, 2004 by Dr. Samuel Méndez-Figueroa (hereafter "Dr. Méndez-Figueroa). The patient's symptoms were assessed as normal and the strength symmetrical in all extremities. Acevedo walked unassisted, without foot dropping or limping. The diagnosis was of chronic lumbalgia.

On November 29, 2004, neurologist Dr. Alfredo Pérez (hereafter "Dr. Pérez") made an evaluation finding normal review of the system as well as cerebral function. Dr. Pérez noted there was good coordination, without ataxia or dysmetria, and there was also symmetrical strength, with pinch prick, with handling and carrying normal. There was no motor atrophy or fasciculation. Tone and gait were adequate. Dr. Pérez' only diagnosis was of low back pain. (*Id.*).

The ALJ further considered medical evidence regarding the mental component of a depressive condition. Dr. Ariel Rojas-Davis (hereafter "Dr. Rojas-Davis") provided psychiatric treatment to plaintiff Acevedo. The patient reported anxiety, poor sleeping, diminished attention and concentration and low self-esteem. Dr. Rojas-Davis found her cooperative, oriented, logical, relevant and with psychomotor retardation. The diagnosis

was of anxiety disorder and recurrent severe major depression. The patient was provided with pharmacological assistance which continued, without change in her symptoms or medications, up to September 8, 2009. Dr. Rojas-Davis reported plaintiff Acevedo's depression initiated upon the closing of her work station. Dr. Rojas-Davis referred to conditions manifested by anhedonia, appetite disturbance with weight change, decreased energy, mood disturbance, difficulty thinking and concentrating, psychomotor retardation, memory impairment and sleep disturbance. Dr. Rojas-Davis opined the patient was unable to meet competitive standards in the mental abilities and aptitudes to do work at all levels of exertion. (Docket No. 5, Transcript, p. 32). However, the ALJ indicated Dr. Rojas-Davis' reports dated September 7, 2004, March 7, 2005 and finally one of March 19, 2007 were in pre-printed forms with filled up boxes and check marks that were inconsistent with the stability shown by the treating notes submitted by said psychiatrist. Furthermore, in the same report, Dr. Rojas-Davis indicated the patient, although depressed, was coherent, relevant and logical in thought, her intellect was proportional to her education, had preserved recent and remote memory, regular judgment and was fully oriented in the three spheres. These descriptions were not considered consonant with the marked limitations in the forms submitted as to all areas of functioning. (*Id.*, p. 33).

The ALJ also considered a consultative psychiatric evaluation performed on December 8, 2004 by Dr. Armando I. Caro (hereafter "Dr. Caro"). There were complaints of anxiety, depressed mood, crying spells, irritability, anhedonia, social isolation, auditive hallucinations, poor sleeping, among others. Dr. Caro's diagnosis was of severe major

depression with a GAF of 50-55– that is, moderate symptoms or difficulties in social, occupational and school functioning.

Dr. Luis E. Cánepa (hereafter "Dr. Cánepa"), a psychiatrist, testified at the administrative hearing and reviewed the available record. Dr. Cánepa opined plaintiff's condition was a combination of low back pain and an emotional condition. The symptomatology resulted in moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. Dr. Cánepa relied on the opinions of the treating sources and found no inconsistencies in the reports and the remaining evidence, giving full credibility to the reports and finding no need to examine progress notes. (*Id.*). The ALJ disagreed in part with Dr. Cánepa and took into consideration the progress notes and supporting documentation for the summarized opinions and report to determine consistency or absence thereof.

On the basis of the above, the ALJ concluded plaintiff Acevedo's back pain and alleged spasms were not in agreement with the treatment followed and she had not been consistent in seeking or following treatment for her back condition since there were numerous gaps in office visits, without explanation. The mental condition showed a condition which remained unaltered, meaning not a significant improvement but at least consistent stability. (*Id.*, p. 34).

The ALJ also referred to discrepancies and/or inconsistencies in the medical record for a state agency physician who found at the initial level that Acevedo did not have a severe impairment and the condition was expected to improve in a year with proper treatment.

Subsequently, a state agency psychiatrist concluded Acevedo's mental condition in overall was of moderate severity. The latter found the patient was able to understand, remember and carry out simple instructions, sustain attention and concentration and was able to perform simple tasks. The ALJ gave full credibility to above assessment by Dr. Luis A. Sánchez (hereafter "Dr. Sánchez"), whose opinion was not available and/or considered by the medical expert, Dr. Cánepa at the administrative hearing. As to the exertional condition, the ALJ also gave full weight and credit to Dr. Sánchez, who found plaintiff Acevedo able to perform work at a medium level of exertion. The evidence of record did not contradict same. To the contrary, the ALJ indicated he did not afford much weight to Dr. Rojas-Davis' reports since these were contradicted by his own notes and by the consultative evaluation of Dr. Caro.

The ALJ concluded plaintiff Acevedo could perform within the residual functional capacity for medium level of exertion, limited to performance of simple tasks due to her mental condition. Considering Acevedo was a younger individual, being 48 years of age at the time last insured, with high school education and no transferability of skills, within her residual functional capacity for medium type of unskilled work, the ALJ found Acevedo not under disability. (*Id.*, pp. 34-35). This administrative determination was affirmed by the Appeals Council.

**LEGAL ANALYSIS**

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996).

The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137,

140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once it was determined that the claimant cannot perform her former kind of work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The ALJ in the instant case followed through the testimony of a vocational expert, Dr. Marieva Puig, to identify the requirements and demands of plaintiff Acevedo's former employment as a fish cleaner. (Docket No. 5, Transcript pp. 597-599). The former job of fish cleaner was considered non-skilled work which required medium level of exertion, the use of fine motor manipulation, good judgment and emotional stability to tolerate the normal level of stress in a regular workplace. (*Id.*, p. 598). As such, the previous relevant work was still within Acevedo's assessed residual functional capacity for medium type of unskilled work. Even if it was considered Acevedo could not perform her former work, with the use of the GRID as a framework and finding she had no limitation to carry out medium level of exertion and the mental limitation solely precluded jobs that were unskilled and with simple task. The ALJ found there were significant number of jobs available in the national economy without further analysis by a vocational expert who was available by telephone at the administrative hearing.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Acevedo was found to retain the residual functional capacity to perform medium type of work, unskilled, limited to simple tasks, and was considered able to perform a significant number of jobs of medium level of exertion which existed in significant numbers

in the national economy using the GRID as framework, for her mental impairment did not significantly erode her capacity to perform said type of work.[3]

In plaintiff Acevedo' memorandum of law, she objects to the ALJ's determinations as not supported by substantial evidence nor applying the correct legal standards. The opposition to the administrative decision refers to the ALJ failing to pose hypothetical questions to the vocational expert to ascertain how the emotional condition and consequential limitations eroded the occupational base to perform particular jobs. (Docket No. 18, p. 8). Plaintiff also objected to the ALJ not giving proper weight to the opinion of treating sources. (*Id.*, pp. 2-4).

The Commissioner's memorandum of law discusses the medical evidence in the record. Defendant avers in particular that the ALJ correctly weighed treating sources to determine Acevedo's residual functional capacity for unskilled, medium level type of work. Succinctly, in support of the ALJ's conclusion, there were laboratory reports and X-rays showing only straightening of the lordosis but were otherwise negative. Neurological evaluations found no motor deficits, no atrophy and no spasm, and the extremities showed full muscle tone symmetrically. (Docket No. 21, pp. 6-7). There was some tenderness at the back, but no limitation of motion and no neurological abnormalities were displayed. Hand functions were full, gait was adequate and there was no carpal tunnel or back injury. The state agency review physicians were also consonant with residual functional assessment for medium level of exertion. (*Id.*, p. 8).

---

[3] GRID is based on plaintiff's exertional capacity and can only be applied when plaintiff's non-exertional limitations do not significantly impair the ability to perform at given exertional level. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994) (*citing* to Sherwin v. Secretary of HHS, 685 F.2d 1, 2-3 (1st Cir. 1982)).

Similarly as to the mental condition. The record showed an individual with fair eye contact, moderate psychomotor retardation, fluent speech, who was coherent and logical, without flight of ideas or looseness of associations. (*Id.*, p. 9). There were expert medical opinions of state agency review psychiatrists finding no significant nor moderate limitations in understanding and memory, with sustained concentration and persistence, social interaction and adaptation. Opinions of examining consultants can constitute, after all, substantial evidence in support of the ALJ's determination.[4] Berríos López v. Secretary of Health & Human Servs., 951 F.2d 427, 431-32 (1st Cir. 1991) (assessments and reports of consultative examining physicians provide substantial evidence to support the ALJ's determination); Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) (ALJ may piece together relevant medical facts from the findings and opinions of multiple physicians).

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

---

[4] The ALJ had available the medical expert opinions of Dr. Luis A. Sánchez-Raffucci, Dr. Méndez-Figueroa, Dr. Pérez-Canabal, Dr. Sánchez-Quiles, Dr. Besquera-García and Dr. Caro.

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ disregarded the evaluations by treating physicians Dr. Méndez-Colón and Dr. Rojas-Davis in that the patient should be considered incapable of performing even sedentary work or lack the mental functional capacity to maintain a full time job but explained why limited weight was provided to said medical opinions. Many of Dr. Méndez-Colón's notes were from dates before alleged onset date, prior to January 15, 2004, or at the end of the relevant period of December 31, 2006. As to Dr. Rojas-Davis, notes were inconsistent with his own assessment in that Acevedo had relevant and coherent speech, was oriented, was cooperative and appeared her chronological age, with logical and coherent thoughts. (Docket No. 5, Transcript, pp. 397-98, 399-400, 435-35).[5]

---

[5] *See* 20 C.F.R. § 404.1527(f)(2)(ii) ( "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant").

Luz Acevedo v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2010 (CVR)
Page No. 15

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[6] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

This Magistrate Judge has considered above evidence in support of the ALJ's determinations and additionally reviewed the record as a whole to determine whether the evidence therein presented substantial evidence. From the above discussion, it is concluded there is substantial evidence for the Commissioner's decision that found plaintiff Acevedo not under disability.

Insofar as the hypothetical questions to the vocational expert, there is also substantial evidence on the record to support the ALJ's finding that Acevedo's mental impairment did not significantly restrict her functional capacity except to perform unskilled work of medium level of exertion and simple tasks. *See* Tavárez v. Commissioner of Soc. Sec., 138 Fed.Appx. 327 (1st Cir. 2005) (when claimant's non-exertional limitations is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the GRID is appropriate); *see also* 20 C.F.R. Pt. 404, Subpt. P, App.

---

[6] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

2 §200.00(e)(2) and SS 85-15 providing that when a claimant suffers both exertional and non-exertional impairments, the GRID may allow a framework for consideration. *Cf.* Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005) (where non-exertional limitation might substantially reduce the range of work an individual can perform, use of the grids is inappropriate and the ALJ must consult a vocational expert).[7]

In view of the above discussed, the decision of the Commissioner is supported by substantial evidence in the record as a whole, insofar as that plaintiff's mental and back conditions did not preclude performance of medium level of exertion nor was she further limited by her mental condition except for simple tasks and unskilled work for which there were significant numbers of jobs available in the national economy.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge considers there is substantial evidence on the record in support of the Commissioner's decision. As such, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 4th day of February of 2013.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court in Fast, 397 F3d. 470, found inappropriate the use of the GRID as a framework for claimant therein suffered only from non-exertional impairment.